**LIBERTY MACHINE COMPANY, Inc.,**
**Plaintiff,**

**v.**

**T & M MACHINE & TOOL CORPORA-**
**TION, and Theodore Malewski,**
**Defendants.**

**No. 17024.**

United States District Court
E. D. New York.

June 1, 1959.

---

Louis I. Rothenberg, Brooklyn, N. Y., for plaintiff, by John H. Lewis, Jr. and Robert F. Davis, Washington, D. C., of counsel.

John P. Chandler, New York City, for defendants.

BYERS, Chief Judge.

This plaintiff seeks an injunction against the defendants on the theory that the latter have contributorily infringed the former's patent No. 2,675,-852 granted April 20, 1954 on application filed June 5, 1953.

In addition to denying the misconduct attributed to it, the defendants plead invalidity of the patent and seek an appropriate decree.

For reasons to be stated, it is the present view that this litigation is not the appropriate vehicle for deciding the question of validity.

The patent contains twelve claims, of which 1, 2, 3, 4 and 6 were agreed to be in suit. The first two are method claims and since it is not asserted that the defendants ever operated the Hicks & Otis machine upon which plaintiff relies to prove its cause, it is clear that those two claims cannot be deemed to be in suit.

The remaining four cover the machine itself, and since plaintiff's counsel conceded that the testimony showed that the defendants did not sell the machine described in the patent, namely one equipped with a radiant heater, it follows that the court is required merely to decide the issue of secondary or contributory infringement as alleged in the amended complaint.

The machine itself is adapted to the treatment of plastic material in sheets, so as to accomplish embossing, and/or laminating two of such sheets.

Embossing means imparting a permanent design to the plastic strip; laminating means bringing two such strips into permanent union so that the final product will be in effect an integral article.

Claim 6 reads:

"6. A machine for embossing and laminating continuous strips of thermoplastic film comprising a frame, a set of heated rollers mounted on said frame work in spaced relationship and adapted to heat both sides of a strip of film entrained thereabout, *means for radiating heat positioned immediately adjacent said rollers*, a cushion roller having a resilient covering mounted on said frame, means for rotating said

cushion roller, an embossing roller carried by said frame, means for adjustably urging said embossing roller against said cushion roller, cooling drums on said frame, and means for winding said laminated continuous strips into a roll carried by said frame, and means on said frame for supporting rolls of continuous strips of thermoplastic film."

The italicized words were said by the patentee to be the heart of his patent, and so it seems to the court.

By way of explanation it should be said that the complex patent drawing does not require present analysis. The structure as shown illustrates the two untreated plastic strips, their respective passage around heating rollers, and their final entry into what is called the Nip of the machine. That element is composed of upper and lower horizontal rollers, of steel and rubber construction respectively, and their area of contact provides as to embossing, the means for the impression of a design by the upper upon the plastic film and a co-acting surface of the lower, to provide a bed needed to render complete and detailed the reception of the design by the plastic film.

As to laminating, these two rollers provide the pressure at the Nip, whereby the union of the two strips is permanently accomplished. When the film emerges either in its embossed or laminated form, it moves upward and around a cooling roller, and is thereafter delivered from the machine. Those successive steps are not involved in this case.

The testimony establishes that when the plastic film enters the machine, it is first heated by the plurality of rollers, passing first over one and then under the next (eight in all, see Plaintiff's Ex. 12) and so on, until it reaches the stage of being about to travel into the Nip. It is to be understood that the application of heat to the film is necessary to soften it sufficiently to render possible the embossing or laminating accomplishment.

The distance between the final heating roll and the Nip is variously stated at from twelve to fifteen inches.

Why this should be so is not explained in the testimony.

That interval is sufficient to cause some cooling to take place in the film, more in the case of thinner gauge plastic than in the thicker. Whether the radiant heat is introduced to compensate for that loss, or to slightly raise the existing temperature in the film before it enters the Nip, cannot be precisely stated. Apparently it is sometimes the one, and sometimes the other. In any case, it is at that stage of the operation that the plaintiff's above quoted "means for radiating heat positioned immediately adjacent said rollers" comes into the picture. It is indicated by the number 56 in Fig. 1 of the patent drawing.

It is a radiant heater unit, not otherwise described, and is assumed to resemble commercial devices designed to radiate heat electrically created.

The power enlisted in the indicated means is not stated, nor is any individuality of structure portrayed to distinguish it from an ordinary device of this kind, nor is the temperature stated of the heat so radiated.

The plaintiff itself does not provide the heating element unless upon request, but its machine is equipped with a bracket upon which the heater may be placed if the purchaser elects to employ such an element. It is evident that the plaintiff contemplates that in such case the purchaser may use his own equipment rigged from his own fixtures.

In other words, the plaintiff in so marketing its machine is doing the very thing that it criticizes the defendant for doing, apparently relying upon its patent as stated in the language quoted from Claim 6 to vindicate that course of dealing.

The evidence persuades the court, and it is so found, that the means for radiant heat is not an element essential to successful operation of the

machine described in the plaintiff's patent. In other words, that such machine without the radiant heater, is a staple commodity of commerce.

It may be said in parentheses that the users of such machines may be likened loosely to printers who buy a press and produce printed matter by operating it. Those who treat plastic film may or may not own the units which are used in embossing. Depending upon the constituency of the film itself, and characteristics of the machine design, they may or may not find it advantageous to employ the "means for radiating heat."

The testimony of the witness Hicks whose deposition was read by plaintiff, and that of the defendants' witnesses who testified at the trial, is persuasive to this court that the sale by the defendants of the machine purchased by Hicks & Otis was of a device designed and built for embossing and laminating plastic film which was complete in itself, and not intended, as the plaintiff argues, to incite the purchaser to equip it with "means for radiating heat positioned immediately etc." If that was his purpose, it has failed according to Hicks as to about 40% of the time that the machine is operated. The decision as to use or non-use of such an article lay entirely with the purchaser.

It is not to be overlooked that the radiant heat element is not alluded to in the plaintiff's advertising matter. The testimony of the patentee on the subject is:

"The Court: First, I think you should ask him whether this illustration on page 2 contains the element of the radiant heater.

"The Witness: No, sir, we have never shown the radiant heater on any of our illustrations, nor on any of our contracts.

"The reason for that has been that we felt that that was the heart of the machine, and in order to keep it to ourselves, we felt that we would have the radiant heater, both in the picture and also in our quotations, removed or not mentioned."

Whatever the true reason may have been for this studied reticence, it is at least consistent with the policy of not supplying a radiant heat element as though it constituted a part of the machine described in the patent.

Upon all the testimony in the case, it is found that the machine sold by the defendants to Hicks & Otis on or about November 29, 1955 was a staple article or commodity of commerce suitable for substantial non-infringing use, within the meaning of 35 U.S.C. § 271(c).

In making this finding the court has relied upon the deposition of Hicks in which he states that he did buy the machine without a radiant heater, and

"Q. Can you tell us when you added this radiant heating unit to the machine?

"A. About one year after the machine went into operation. It was capable of doing an embossing job without it. We felt the addition of it improved it somewhat.

\* \* \* \* \* \*

"A. Yes, we have used radiant heat and heaters for embossing ourselves since 1949.

\* \* \* \* \* \*

"A. It is not used all the time. It is in use, I would say, on an average, three days a week."

In view of the foregoing, it is concluded that the plaintiff has failed to sustain its burden of proof, and its amended complaint must be dismissed accordingly on the merits, with costs.

It is not believed that the validity of the plaintiff's patent can be adequately disposed of upon the record made in this case; that it may be possible of more informed adjudication in a cause in which direct infringement is thought to be present. The plaintiff's case here rests, as to validity, upon the sole testimony of the patentee and perhaps a more comprehensive presentation would be of greater assistance to the court in such a controversy.

It may be proper to add in this connection, that there is testimony to the

effect that while the radiant heater is useful, it is not essential to the successful operation of the plaintiff's machine, because the cooling interval during the passage of the film from the final heating roller into the Nip, can be shortened and thus arrested by the mere expedient of speeding up that movement.

As to the counterclaim, since the evidence is in defendants' favor concerning the alleged secondary infringement, the outcome of the litigation as here decided really leaves defendants in the position of strangers to the patent, apparently having nothing at stake in the question of validity.

Therefore the counterclaim will be dismissed without adjudication upon the merits.

Settle decision in accord with the foregoing, and if additional findings are desired, they may be submitted therewith, likewise upon notice.